# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 12-33304-WRS |
| | Chapter 7 |
| RAY MOORE, | |
|     Debtor | |
| RAY MOORE, | |
|     Plaintiff | Adv. Pro. No. 18-3061-WRS |
| v. | |
| AUTOMOTIVE FINANCE CORPORATION, | |
|     Defendant | |

**MEMORANDUM DECISION**

This Adversary Proceeding came before the Court for hearing on October 2, 2018, on the Defendant's Motion to Dismiss (Doc. 7), and Plaintiff's Response (Doc. 11). Plaintiff Ray Moore was present by counsel Anthony B. Bush, and Defendant Automotive Finance Corp. was present by counsel R. Scott Williams. For the reasons set forth below, the motion is GRANTED and the complaint is DISMISSED WITH PREJUDICE.

**I. Facts**

As this matter is before the Court on a motion to dismiss, the Court accepts as true, all of the well-pled allegations in the Complaint. Moore filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on December 14, 2012. On August 2, 2015, Moore converted his case to one under Chapter 7 of the Bankruptcy Code. This Court entered a

discharge on March 8, 2016. One of the discharged debts was for $70,000 owed to Automotive Finance.

Moore is in the business of buying and selling used cars. In March of 2018, M & M Luxury Imports, LLC, a business that Moore owns an interest in, attempted to gain admission to Auction Access, which is an auction site where used cars are bought and sold on-line. M & M's application to gain access was denied, apparently because Automotive Finance reported the fact of Moore's discharged debt.[1]

Moore and his partner in M & M contacted representatives of Automotive Finance and inquired as to what could be done to gain access to the auction site. Automotive Finance's representative, Andy Middleton, told Moore's partner to "throw him a number." Moore's partner responded with an offer of $1,000. Middleton countered with an offer of $2,000. Moore claims that Automotive Finance violated the discharge injunction when Middleton made the counteroffer.

## II. Law

### A. Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This is a final order.

---

[1] The discharged debt was owned by Automotive Finance, but it was Auction Access, an unrelated party who was not a creditor of Moore's, that took action. The Court draws all inferences in favor of the nonmoving party.

### B. Motion to Dismiss Standard

Motions to dismiss are governed by Rule 12(b)(6), Fed. R. Civ. P., which is made applicable to this proceeding by Rule 7012, Fed. R. Bankr. P. The standard to be applied was set out in a case recently handed down by the Eleventh Circuit.

> To survive a motion to dismiss, a complaint must allege enough well-pled facts, accepted as true and construed in favor of the plaintiff, to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). For a claim to be facially plausible, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant, and instead must offer sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Allegations that are no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are not well-pled facts that must be accepted as true and will not be sufficient to withstand a motion to dismiss. Id. at 678, 129 S.Ct. 1937 (internal quotation marks omitted; alteration adopted); see also Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal.")

*Jones v. Citimortgage, Inc.,* 666 Fed.Appx. 766, 772 (11th Cir. 2016).

### C. Adversary Proceeding

In a case recently handed down by the Eleventh Circuit, the Court has expressed a preference that proceedings to enforce the discharge injunction be brought by way of a motion filed in the bankruptcy case, thereby initiating a contested matter, rather than by way of an

3

adversary proceeding. *Green Point Credit, LLC, v. McLean (In re McLean)*, 794 F.3d 1313, 1326 (11th Cir. 2015); *Cf.* Rule 7001, et. seq., and Rule 9014, Fed. R. Bankr. P. As this matter was initiated by the Debtor in the form of an Adversary Proceeding, it is presently stuck with this form. As this is to be disposed of by way of a dismissal, it appears the most efficient way to handle this is to dismiss the complaint, with prejudice, without first converting to a contested matter. Had this matter proceeded to an evidentiary hearing, the Court would have converted this to a contested matter.

### D. The Discharge Injunction

A discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Creditors who continue to attempt to collect debts, that have been discharged in bankruptcy, may be held liable for damages for violating the discharge injunction. *Otero v. Green Tree Servicing, LLC (In re Otero)*, 498 B.R. 313, 320-21 (Bankr. D.N.M. 2013)(holding that repeated telephone calls to collect a discharged debt violated the discharge injunction); *McClure v. Bank of America (In re McClure)*, 420 B.R. 655, 660 (Bankr. N.D. Tex. 2009)(holding that Bank of American willfully violated discharge injunction when it turned over two debts for collection knowing that they were discharged); *Motichko v. Premium Asset Recovery Corp. (In re Motichko)*, 395 B.R. 25, 32 (Bankr. N.D. Ohio 2008)(finding that continued collection efforts such as collection calls and

4

notices made to collect a discharged debt violate the discharge injunction); *In re Jones*, 389 B.R. 146, 159 (Bankr. D. Mont. 2008)(taking default judgment on discharged debt violated the discharge injunction).

A proceeding to enforce the discharge injunction is one in the nature of contempt. *In re McClean*, 794 F.3d at 1326. "Section 524 is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that." *Id*. at 1321 (citing H.R. Rep. No. 95-595, at 365-55 (1977)). "The violation of an injunction is a contempt against an entire court insofar as it flouts the court's basic authority to preserve order and administer justice. [citations omitted] Accordingly, any court—bankruptcy court included—has inherent powers to punish contempt against it, as a means of protecting itself as an institution." *Id.* at 1319 (citing *Jove Eng'g, Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1553 (11th Cir.1996)).

The usual test applied to determine whether there has been a violation of the discharge injunction is a two-part test: (1) whether the defendant knew that discharge injunction was invoked; and (2) whether the defendant intended the action which violated the discharge injunction. *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996). It is undisputed here that Automotive Finance knew of Moore's discharge in bankruptcy and that it intended the acts attributed to it. The more relevant question here is whether the acts done by Automotive Finance did in fact violate the discharge injunction.
5

### E. Automotive Finance's Refusal to Do Business, in the Future, Is Not Coercive Conduct Which Implicates the Discharge Injunction

At the October 2, 2018 hearing, the Court inquired of Plaintiff's counsel whether he was taking the position that Automotive Finance violated the automatic stay by refusing to do business with Moore in the future. Plaintiff's counsel responded that he was not. As a general principle of bankruptcy law, a creditor is not required to do business with a debtor who has discharged his debt in the past. *See Brown v. Penn. State Employees Credit Union*, 851 F.2d 81, 85 (2nd Cir. 1988)(holding that a credit union did not violate either § 362 or § 524 when it stated that it would refuse to do business with the debtor in the future, unless she reaffirmed her debt).

### F. Having Established that Automotive Finance Was Not Under a Duty to Do Business With Moore, Whether Automotive Finance Violated the Discharge Injunction When it Responded to Moore's Offer of Payment

Section 524(f) of the Bankruptcy Code provides that "(n)othing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt." When Moore and his partner approached Automotive Finance and inquired as to how they might square things, a representative of Automotive Finance responded to the inquiry by saying "shoot me a number." In other words, it asked for an offer. Moore's partner in fact made an offer and Automotive Finance made a counteroffer. Moore claims here that Automotive's counteroffer is an "act to

6

collect" within the meaning of § 524(a)(3), and therefore violates the discharge injunction.

The Eighth Circuit handed down a decision finding payments made under a lease were voluntary and declined to find a violation of the discharge injunction. *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1023-24 (8th Cir. 2002). In *DuBois*, the debtor had leased an automobile at the time she filed bankruptcy. She kept the vehicle and continued to make payments on the lease after her bankruptcy filing–the parties did not enter into a reaffirmation agreement. *See* 11 U.S.C. § 524(c). After discharge was entered, DuBois approached Ford and leased another vehicle. However, as a condition to entering into the second lease, Ford insisted the excess mileage charges which had come due under the first lease be rolled into the second lease. DuBois voluntarily entered into the second lease and voluntarily made payments under that lease for two and one-half years when she brought suit against Ford contending that it had violated the discharge injunction when it insisted on including the excess mileage charges incurred under the first lease be included as a charge in the second lease. The Court in *DuBois* found no violation of the discharge injunction as the debtor had voluntarily entered into the lease and voluntarily made payments. Nothing in the complaint suggested that the debtor did not have a choice, not to do business with Ford, and that her actions were voluntary. *Id*. at 1023-24.

This Court is of the view the facts in *DuBois* are sufficiently analogous to provide guidance here. Ford was not required to lease another vehicle to DuBois. Moreover, DuBois had the choice to do business with other automobile dealers. She did not have to lease another vehicle from Ford. When she voluntarily signed the new lease, rolling in the excess mileage charges from the old lease, she had no grounds to complain that she had been coerced into paying a discharged debt. At the time DuBois filed her bankruptcy case, she could have taken her car

7

back to Ford, surrendered it, and owed nothing. Had Ford then proceeded to attempt to collect amounts owed on the now discharged lease, it would have violated the discharge injunction.

This Court also finds instructive a well reasoned decision recently handed down by a bankruptcy court in the Northern District of New York. *In re Morgan*, 578 B.R. 712 (Bankr. N.D.N.Y. 2017). In *Morgan*, a debtor approached his credit union and inquired how he could "rebuild" his credit. The credit union responded by informing Morgan that he would have to pay his now discharged debt, in full, before the credit union would open a new account and provide services. The Bankruptcy Court in *Morgan* concluded that this communication did not violate the discharge injunction. *Id*. at 717. The Bankruptcy Court in *Morgan* stated the debtor could have found someplace else to bank, rather than suing his former credit union for refusing to provide services–something the law allows it to do. The same could be said to the Debtor here–he can either find another place to do business, or he can accept Automotive Finance's terms. He cannot force an unwilling creditor to do business with him and then sue if they refuse. The give and take of negotiations such as this should not be penalized by the courts.[2]

Moore contends that he has suffered losses, in an amount of upwards of tens of thousands of dollars, for lost business opportunities. (Doc. 1, para. 24). The premise of Moore's complaint–contrary to his concession at oral argument–is that he has the unbridled right to do business in the future with Automotive Finance. Worse yet, under Moore's theory, Automotive

---

[2] The Court recognizes that there are narrow exceptions to the general rule that a creditor is not required to continue to do business with a debtor. For example, utility companies may not discriminate as a result of a bankruptcy filing. 11 U.S.C. § 366. In addition, employers may not discriminate against debtors. 11 U.S.C. § 525. In this case, the Plaintiff makes no argument that he is entitled to an exception to the general rule that creditors may choose not to do business with debtors in the future as a result of a bankruptcy filing.

Finance could be sued in Federal Court and held liable for damages, if it refused to do business with the debtor on terms of the debtor's choosing. This is an unwarranted extension of the protections afforded debtors under § 524.

There is some tension between § 524(a) and § 524(f). Debts which are voluntarily paid are undoubtedly compelled by something. Businessmen do business with one another because they believe it to be mutually advantageous. A voluntary payment may well be the carrot that lures the creditor to once again do business with the debtor who has discharged a debt in the past. So long as it is the debtor who initiates the negotiations, and so long as he has reasonable alternatives to doing business with his former creditor, he cannot be heard to complain if he does not like the terms under which the creditor will do future business. The debtor's alternative to repaying a discharged debt, if that is the creditor's condition to doing future business, is to go elsewhere to do business and not to march into Federal Court, arguing that a creditor must do business with him under terms of the debtor's choosing.

One potential cost of filing bankruptcy is that lenders and those who extend credit may choose not to do business with one who has previously filed bankruptcy.[3] There is nothing in § 524, or elsewhere in the Bankruptcy Code, which requires one to do business with a bankrupt. To permit suits such as this would expose the businessman to either risk of multiple credit losses on the one hand, or liability for violation of the discharge injunction on the other. Nothing in § 524 of the Bankruptcy Code allows a debtor to place his creditor on the horns of this dilemma.

---

[3] The Fair Credit Reporting Act permits a credit report to disclose bankruptcy filings which are less than 10 years old. 15 U.S.C. § 1681c(a)(1). This suggests that businesses may properly take into account bankruptcy filings when making a decision whether to extend credit. Were it otherwise, bankruptcy filings could not be disclosed regardless of their age.

## III. CONCLUSION

Moore voluntarily initiated negotiations with Defendant Automotive Finance, a creditor whose debt had been discharged. Having voluntarily initiated negotiations, he was free to terminate negotiations at any time. He should not be heard to complain that Automotive Finance answered the phone when he called. Moore, as any debtor, may voluntarily pay a discharged debt. It follows, that when a debtor voluntarily initiates negotiations with a creditor, who has the right to refuse to do business with the debtor, he cannot be heard to complain when the creditor responds to inquiries and offers made by the debtor. The actions complained of here did not violate the discharge injunction because they were voluntary business negotiations, not in any way coercive, with either party free to refuse to do business with the other. For this reason, the complaint is dismissed, with prejudice. The Court will dismiss the complaint by way of a separate order.

Done this 1st day of November, 2018.

/s/ William R. Sawyer

United States Bankruptcy Judge

c: Anthony B. Bush, Attorney for Plaintiff
R. Scott Williams, Attorney for Defendant